Illingworth *v.* Pittsburgh Railways Company, Appellant.

Argued March 23, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*D. H. McConnell,* with him *J. R. McNary,* for appellant.

*Harry A. Estep,* with him *James T. Philpott,* for appellee.

OPINION BY MR. JUSTICE BARNES, June 17, 1938:

This is an appeal by defendant from the judgment entered upon a verdict in favor of the plaintiff, following the refusal by the court below of defendant's motions for judgment non obstante veredicto, and for a new trial.

The plaintiff was injured by stepping into a hole while crossing the right of way of the defendant at the south end of the Smithfield Street bridge, in the City of Pittsburgh. At the southern approach to the bridge, the highway of Smithfield Street contains a safety platform or island for the use of street car patrons. The area between this platform and the easterly curb of Smithfield Street constitutes the right of way of defendant over which it operates its trolley cars, while the highway west of the safety platform is devoted to the use of vehicular traffic. At this end of the bridge there is a public crossing for pedestrians over the cartway of Smithfield Street, which continues over the right of way of the defendant company.

On April 21, 1933, shortly after nine o'clock P. M., plaintiff crossed the bridge on the east footway, and when he had reached its south end, he turned to the right intending to go to the safety platform to wait for a trolley car. He stepped from the pavement to the street, when his foot was caught in a deep hole, and he was thrown to the ground, his body falling over the trolley rail. The hole into which the plaintiff stepped was within the lines of the right of way of the defendant company. It was immediately adjacent to the east curb, was approximately nine to twelve inches in depth, and was of such size that plaintiff was unable to extricate himself. His foot was released by the policeman on duty at the crossing at the time of the accident. The officer assisted plaintiff to the safety platform where he was helped into a trolley car and was taken to his home.

Plaintiff was removed to the hospital on April 25, 1933, and remained there for approximately five weeks. As the result of the fall he suffered a partial paralysis of the right leg. Prior to the accident he was employed as a mechanic, but his injuries have made it impossible for him to work at his trade and he is forced to accept less remunerative employment. At the time of trial he was working as a night watchman.

The defendant does not deny its responsibility for the existence of a dangerous condition at the location of the accident, or that plaintiff stepped into the hole and was injured. It admits that it was guilty of negligence. It contends, however, that it should not be held liable in damages because plaintiff attempted to cross Smithfield Street at a point not within the limits of the regular public crossing. It asserts that the public crossing is located some ten to twelve feet south of the place of the accident, which is clearly marked by flagstones set into the paving block for the purpose; that plaintiff was guilty of contributory negligence in crossing at a dangerous place when a safe, adjacent route for crossing was provided.

It is a disputed question of fact between the parties whether the hole into which plaintiff stepped was within or without the bounds of the established public crossing.

Plaintiff claims that the crossing extends to the south end of the bridge, and that the depression into which he fell was embraced in the usual and defined crosswalks of Smithfield Street at that location. He testified that he had seen other persons cross Smithfield Street close to the southern end of the bridge at the point where he started to cross. The policeman who came to his assistance stated that he had been stationed at the location for two and a half years, and that the place where plaintiff fell was within the lines of the public crossing customarily used by persons at this point to go to the Pittsburgh and Lake Erie Railroad station on the west side of the street, or to the trolley safety platform. This tes-

timony was corroborated by that of George Carroll, who has conducted a newsstand at the south end of the bridge near the railroad station for thirty-three years, and who said that the crossing used by pedestrians extended to the point where plaintiff was injured.

To contradict this evidence the defendant called J. A. Kroll, its chief inspector, who gave testimony that the crossing was confined to four strips of flagstones located ten to twelve feet to the south of the place where plaintiff attempted to cross Smithfield Street.

It appears from the record that on the west side of the street used for vehicular traffic, yellow lines were painted upon the cartway by the City of Pittsburgh to indicate the extent of the public crossing. The testimony does not disclose the distance between the yellow lines, but witnesses testified that if the lines were extended across the car tracks to the east curb of the street, the hole into which plaintiff fell would be included within the crossing as evidenced by the painted lines.

There was testimony that plaintiff had not crossed Smithfield Street at this particular point on any prior occasion, and had no knowledge of the existence of its dangerous condition. While there were a number of lights over the sidewalk and the area near the bridge span, plaintiff said that the place into which he stepped was obscured by a shadow. His testimony suggests that the shadow might have been cast by his body as it came between the overhead lights and the hole into which he fell.

Our review of the evidence leads to the conclusion that it cannot be held as a matter of law that plaintiff rejected a safe crossing and deliberately selected and tested a more hazardous one, because there is no testimony that he knew or should have known of the condition of that portion of the crossing selected by him. Whether he should have observed the hole, or whether it was obscured by his shadow or the shadow of the curb

are questions of fact rather than of law. Plaintiff fell within the right of way of the defendant company. The jury by its verdict has determined that the hole into which he stepped is embraced within the limits of the public crossing. We feel that the question of contributory negligence was necessarily for the jury's determination, and there was no error in refusing defendant's motion for judgment.

A street railway company is bound to maintain that portion of the public highway occupied by its rails and tracks in a reasonably safe condition so that persons crossing on foot or in vehicles and exercising due care on their part will not be injured as a result of its neglect to perform this obvious duty: *Reading v. United Traction Co.*, 202 Pa. 571; *Reading v. United Traction Co.*, 215 Pa. 250; *Brobston v. Darby Borough*, 290 Pa. 331; *Yoder v. Phila.*, 315 Pa. 586; *Culver v. Lehigh Valley Transit Co.*, 322 Pa. 503.

It is also urged by defendant that the medical testimony introduced by the plaintiff was insufficient to establish that the injuries were the result of the accident. Dr. Bradford, the plaintiff's attending physician, after stating that he had received a history of the case, was asked: "Would an injury and a condition such as he suffered result from such a fall as was described to you in the history of the case?" to which he answered: "Yes, traumatism causes this particular trouble." In our opinion the learned trial judge was justified in submitting to the jury the question whether there was a causal connection between the plaintiff's fall and the injuries complained of, and there is no merit in defendant's contention. In *Paul v. Atlantic Refining Co.*, 304 Pa. 360, it is said (p. 364) : "Where the disability complained of is the natural result of the injuries a jury may be permitted to so find, even in the absence of expert opinion. See *Connor et al. v. Phila. R. T. Co.*, 98 Pa. Superior Ct. 250; *Utzman v. Penna. Rubber Co. et al.*, 96 Pa. Superior Ct. 463; *Davis v. Davis*, 80 Pa. Superior Ct. 343;

*Grobuskie v. Shipman Coal Co.,* 80 Pa. Superior Ct. 349. The physician's opinion may be strengthened or supplied by what actually happened: *Curry v. Wilson et al.,* 301 Pa. 467; *Moseley v. Reading Co.,* 295 Pa. 342." The testimony clearly indicates that the plaintiff's present condition is attributable to the injuries sustained at the time of the accident.

We conclude that the record discloses nothing which would justify this Court in disturbing the verdict of the jury.

Judgment affirmed.